IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RYAN PFILPSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE No. 5:19-cv-1437-RBF |
| BE RIOS, LTD., d/b/a | ) | |
| RIOS CRYSTAL MALL, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED JOINT STIPULATION TO APPROVE CONSENT DECREE
AND TO DISMISS DEFENDANTS WITH PREJUDICE**

Plaintiff, Ryan Pflipsen ("Plaintiff") and Defendant, Be Rios, LTD., d/b/a Rios Crystal

Mall, hereby file this Amended Joint Stipulation seeking the Court's Approval of the parties'

Consent Decree and to Dismiss Defendant, BE RIOS, LTD., d/b/a RIOS CRYSTAL MALL,

with Prejudice:

1.      Plaintiff filed the instant cause of action alleging that the Property operated

and/or owned by Defendants violated Title III of the Americans with Disabilities Act, 42

U.S.C. § 12181 *et seq.*

2.      The matters raised by Plaintiff's Complaint have been resolved in accordance

with the Consent Decree ("Settlement") attached hereto as Exhibit "1".

3.      In accordance therewith, the Parties request that the Court review, approve and

ratify the Consent Decree.  Additionally, the Parties request the Court retain jurisdiction to

enforce the terms of the Settlement for a period of no longer than twelve (12) months from

the date of the Court's approval.  This Settlement is conditioned upon the Court's retaining

1

jurisdiction to enforce said Settlement.

4.      As part of the Settlement reached between the Parties, Plaintiff has agreed to dismiss Defendant, BE RIOS, LTD., d/b/a RIOS CRYSTAL MALL, with prejudice. Accordingly, the Parties request, upon the Court's review, approval and ratification of the Settlement, Defendant, BE RIOS, LTD., d/b/a RIOS CRYSTAL MALL, be dismissed with prejudice.

5.      Except as otherwise stated in the Settlement, each party to bear their own fees and costs.

WHEREFORE, the Parties respectfully request that this Honorable Court enter an Order approving the attached Consent Decree, dismissing the claims asserted by Plaintiff against Defendant, BE RIOS, LTD., d/b/a RIOS CRYSTAL MALL, with prejudice, and retaining jurisdiction to enforce the Settlement.

Respectfully submitted this 24th day of May, 2021.

Respectfully submitted,

/s/  Dennis R. Kurz
Dennis R. Kurz
*Attorney-in-Charge for Plaintiff*
Texas State Bar ID No. 24068183
Kurz Law Group, LLC
4355 Cobb Parkway, Suite J-285
Atlanta, GA 30339
Tele: (404) 805-2494
Fax: (770) 428-5356
dennis@kurzlawgroup.com


/s/  Benjamin F. Youngblood, III, Esq.
Benjamin F. Youngblood, III, Esq.
*Attorney-in-Charge for Defendant*

2

Texas State Bar ID No. 22213700
130 East Travis Street, Suite 530
San Antonio, Texas 78205
(210) 308-9829 Phone
(210) 308-9854 Facsimile
bfy@prodigy.net

# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RYAN PFLIPSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE No. 5:19-cv-1437-RBF |
| BE RIOS, LTD., d/b/a | ) | |
| RIOS CRYSTAL MALL, | ) | |
| | ) | |
| Defendant. | ) | |

## **CONSENT DECREE**

This Consent Decree (this "Agreement") is made and entered into by and between Ryan Phlipsen referred to in this Agreement as ("Plaintiff") and BE RIOS, LTD., d/b/a RIOS CRYSTAL MALL ("Defendant"). The signatories to this Agreement will be referred to jointly as the "Parties." This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## **Preamble**

**WHEREAS**, on or about December 12, 2019, Plaintiff filed an action in the United States District Court for the Western District of Texas, entitled *Ryan Phlipsen v. Be Rios, LTD., d/b/a Rios Crystal Mall,* Case No: 5:19-cv-1437-RBF (the "Action"), wherein Plaintiff asserted claims for injunctive relief against Defendant based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq*. ("ADA") and related claims for relief respecting the real property located at or about 5714 Evers Road, San Antonio, TX 78238, Bexar County Property Appraiser's Parcel ID: 218924 (the "Facility");

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation;

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendant shall be fully, forever, and finally released; and

**NOW, THEREFORE**, in consideration of the covenants and mutual

1

promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

**1.**     **Attorney's Fees and Costs**

      1.1     Plaintiff and Defendant shall execute this Agreement and Plaintiff's counsel, Dennis R. Kurz, Esq., Kurz Law Group, LLC shall prepare a Joint Stipulation to Approve Consent Decree and Dismissal of Defendant with Prejudice to be distributed to all Parties for execution. Defendant agree to pay a total settlement amount of **$4,800.00** comprising of attorney's fees and costs of $4,500.00 and a reinspection fee of $300.00 (the "Settlement Payment"). All payments shall be made payable to "**Kurz Law Group, LLC**," with an indication that the check is issued "in settlement of Case No. 5:19-cv-1437-RBF.

      1.2     Upon delivery to Plaintiff's Counsel of the fully executed Agreement and payment due with the executed Agreement referenced in 1.1 above Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and Dismissal of Defendant with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

      1.3     Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of his or its own litigation expenses, costs and attorneys' fees.

      1.4     Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendant has not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

      1.5     The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

## 2.   **Alterations or Modifications to the Facilities**

2.1    The Parties hereto acknowledge and stipulate that Defendant shall modify or alter the items expressly identified by and in the manner specified in Exhibit "A." The repairs or modifications identified in Exhibit "A" shall be completed in all respects no later than twenty four (24) months from the effective date of the execution of this Agreement, which shall be the date indicated by the last signatory to the Agreement.  The time period for Completion by Defendant shall be subject to acts of God, force majeure, or events beyond the control of Defendant, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in Exhibit "A" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendant provides notice to Plaintiff's Counsel prior to the original completion date set forth above.

2.2    Upon completion of the removal of the barriers and the alterations and modifications set forth in Exhibit "A", Defendant shall provide written notice by certified or registered mail or via e-mail to Plaintiff's Counsel.

2.3    Right to Inspection: The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in Exhibit "A" or after the elapse of the twenty four (24) month time period set forth in Section 2.1 above, whichever is sooner, Plaintiff may inspect the Facility to ensure that Defendant has completed the repairs or modifications described in Exhibit "A." Defendant shall provide Plaintiff or their representative reasonable access to the Facility to verify completion of the work described in Exhibit "A."

2.4    If an inspection contemplated herein reveals that any of the alterations or modifications described in Exhibit "A" have been performed in a manner that does not materially comply with Exhibit "A," Plaintiff shall have the right to enforce this Agreement pursuant to Section 3.1.

2.5    It is agreed by all parties that if and upon all of the above modifications being completed as set forth in Exhibit "A," the Facility will be fully compliant with the ADA pursuant to the readily achievable standard.

2.6   The parties agree that the complaint provisions and modifications and alterations described in Exhibit "B" are Structurally Impracticable due to the unique characteristics of the property as defined in 28 CFR Sec.36.401.

## 3.   **Enforcement Provisions**

3

3.1    In the event the alterations and modifications described in Exhibit "A" are not completed in the manner and time frame set forth in this Agreement, Plaintiff shall be entitled to file an action to obtain specific performance against Defendant or otherwise enforce the requirements of this Agreement. In any action to enforce this Agreement, the parties agree Defendant's failure to timely modify the property pursuant to Section 2.1 above is a material breach of the Agreement.

**4.      Compromise**

4.1    The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in Section 5.1 below). The Released Parties expressly deny any such liability, wrongdoing, or responsibility.

**5.      Mutual Release**

5.1    In exchange for the good and valuable consideration set forth herein the sufficiency of which is hereby acknowledged, the Parties hereto mutually release each other, or through their corporate capacity, agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively the "Releasing Parties") hereby release, acquit, satisfy and discharge the other, and along with any and all of their predecessors, agents, employees, assigns, heirs, officers, directors, shareholders, members, affiliated entities, and any entity or person related to them, jointly and severally, (hereinafter the "Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits of any kind which the Releasing Parties may have, may have had, or may hereafter raise against the Released Parties, including but not limited to this subject litigation arising under Title III of the ADA including all claims by the Releasing Parties for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost, with the exception of the attorneys' fees and costs required to be paid by the Defendant pursuant to Paragraph 1 of this Agreement and any attorney's fees and costs incurred in the any future enforcement of this Agreement.  This Release is strictly limited to the Facility.

5.2    As a material inducement for Defendant to enter into this Agreement, Plaintiff represents and warrants that he is not aware of any pending tort, contract, or other legal claims against Defendant, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

5.3    Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm,

4

or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

**6.**   **Notice**

6.1   Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

To Defendant:
**BE RIOS, LTD., d/b/a RIOS CRYSTAL MALL**
c/o Benjamin F. Youngblood, III, Esq.
Texas State Bar No. 22213700
130 East Travis Street, Suite 530
San Antonio, Texas 78205
Phone (210) 308-9829
bfy@prodigy.net

To Plaintiff:
**RYAN PHLIPSEN**
c/o Dennis R. Kurz, Esq.
Texas State Bar No. 24068183
KURZ LAW GROUP, LLC
4355 Cobb Parkway, Suite J-285
Atlanta, GA 30339
(404) 805-2494 Phone
dennis@kurzlawgroup.com

6.2   A Party may change such address for the purpose of this paragraph by giving timely written notice of such change to all other Parties to this Agreement in the manner provided in this paragraph.

**7.**   **Free Will**

7.1   The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

5

## 8.    **Miscellaneous Terms and Conditions**

8.1    This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein.

8.2    This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3    This Agreement may be modified only by a written document signed by all of the Parties.  No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4    This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

8.5    If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6    The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7    Plaintiff represents that, other than the Action, he has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on his behalf, he or it will use his or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8    The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9    In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10   The Parties agree that any ambiguities in this Agreement shall not be construed against the drafter of the Agreement.

8.11   The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding paragraph 1 are incorporated as a material part of this Agreement.

8.12   This Agreement is entered into in, and shall be governed by and construed and interpreted in accordance with the substantive laws of the State of Texas.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

DATED: Date _1/24/2021 2020_ _____
**Ryan Phlipsen**

DATED: Date _January 25_, 2020 _____
For: **Defendant, Be Rios, LTD, d/b/a Rios Crystal Mall**

Title: _General Partner_

7

## EXHIBIT A

For purposes of this Agreement, "2010 ADAAG standards" refers to the ADA Accessibility Guidelines 28 C.F.R. Pt. 36, App. A.

**The following modifications are to be made by Defendant:**

**ACCESSIBLE ELEMENTS**

(i) Near Unit 6126, the accessible parking space shall be modified to correct excessive vertical rises and be made level or otherwise to be brought into conformity with Sections 303.2 and 502.4 of the 2010 ADAAG standards.

(ii) Near Unit 6410, the walking surfaces of the accessible route shall be modified to correct its slope in excess of 1:20 or to otherwise be brought into compliance with section 403.3 of the 2010 ADAAG standards. As the accessible route is in excess of 1:20, it shall be considered an accessible ramp due to its total rise greater than six (6) inches, and therefore shall have handrails installed or otherwise be brought into compliance with section 505 of the 2010 ADAAG standards and section 405.8 of the 2010 ADAAG Standards.

(iii) Near Unit 6150, the accessible parking space shall be adequately marked in conformity with section 502.1 of the 2010 ADAAG standards.

(iv) Near Unit 6150, the accessible parking space and associated access aisle shall be modified to correct its slope in excess of 1:48 or to

8

otherwise be brought into conformity with section 502.4 of the 2010 ADAAG standards and be made level.

(v) Near Unit 6150, the access aisle to the accessible parking space shall be made level with respect to the presence of an accessible ramp in the access aisle or otherwise brought into compliance with section 502.4 of the 2010 ADAAG standards.  In addition, the accessible curb ramp shall be modified to correct any improper protrusion into the access aisle of the accessible parking space or to otherwise be brought into compliance with section 406.5 of the 2010 ADAAG Standards.

(vi)   Near Unit 6150, both sides of the accessible ramp shall include handrails or otherwise be brought into compliance with section 505.2 of the 2010 ADAAG standards.

(vii)   Near Unit 6150, the accessible ramp leading from the accessible parking space to the accessible entrances shall be modified to correct its slope exceeding 1:12 or to otherwise be brought into compliance with section 405.2 of the 2010 ADAAG standards.

(viii)   (intentionally deleted)

(ix)   At Unit 6158, the front door shall include proper hardware in compliance with section 309.4 of the 2010 ADAAG standards.

(x) Near Unit 5732, publically accessible areas of the Property shall be modified to include accessible routes with clear widths at or above the minimum 36 (thirty-six) inch requirement as required by section 403.5.1 of the 2010 ADAAG standards, as well as Defendant modifying its

9

policy of permitting shopping carts to block the accessible route such as providing a nearby shopping cart corral as well as the placement of nearby columns.

(xi)   Near Unit 5732, the walking surfaces of the accessible route shall be modified to correct its slope in excess of 1:20 or otherwise brought into compliance with section 403.3 of the 2010 ADAAG standards. As the accessible route is in excess of 1:20, it shall be considered an accessible ramp due to its total rise greater than six (6) inches, and shall have handrails installed in compliance with section 505 of the 2010 ADAAG standards, as well as section 405.8 of the 2010 ADAAG Standards.

(xii)   At Unit 5726, the front door shall be modified to include proper hardware or to otherwise be brought into compliance with section 309.4 of the 2010 ADAAG standards.

(xiii)   The Property shall be modified to include an accessible route from the accessible parking space near Unit 5724 to the accessible entrance of the Property, specifically to include a nearby ramp, or to otherwise be brought into compliance with section 206.2.1 of the 2010 ADAAG standards.

(xiv)   Near Unit 5724, the ground surfaces of the access aisle shall be modified to eliminate any vertical rises in excess of ¼ (one quarter) inch in height, any unstable or slip resistant surfaces, or any broken or unstable surfaces or to otherwise be brought into compliance with Section 302 and 303 of the 2010 ADAAG standards.

10

(xv)   Near Unit 5720, the walking surfaces of the accessible route shall be modified to correct their slope in excess of 1:20 or to otherwise be brought into compliance with section 403.3 of the 2010 ADAAG standards. As the accessible route is in excess of 1:20, it shall be considered an accessible ramp due to its total rise greater than six (6) inches and, as such, shall have handrails in compliance with section 505 of the 2010 ADAAG standards, as well as section 405.8 of the 2010 ADAAG Standards.

(xvi)  Near Moroccan Bites Tajine, Defendant shall modify is policy of placing tables and a potted plant in the accessible route, such that any publically accessible areas of the Property shall have accessible routes with clear widths at or above the minimum 36 (thirty-six) inch requirement as required by section 403.5.1 of the 2010 ADAAG standards.

(xvii) Near Moroccan Bites Tajine, the access aisle to the accessible parking space shall be made level with respect to the presence of an accessible ramp in the access aisle or otherwise brought into compliance with section 502.4 of the 2010 ADAAG standards. In addition, the accessible curb ramp shall be modified to correct any improper protrusion into the access aisle of the accessible parking space or to otherwise be brought into compliance with section 406.5 of the 2010 ADAAG Standards.

(xviii) Near Moroccan Bites Tajine, the accessible ramp side flares shall be modified to correct any slope in excess of 1:10 or otherwise brought into compliance with section 406.3 of the 2010 ADAAG standards.

(xix)   Near Moroccan Bites Tajine, the excessive vertical rise at the top of the accessible ramp shall be modified to be brought into compliance with Section 303.2 and 405.4 of the 2010 ADAAG standards.

(xx)   Near Moroccan Bites Tajine, the accessible parking space shall include a proper identification sign or otherwise brought into compliance with section 502.6 of the 2010 ADAAG standards.

(xxi)   Near Unit 5704, the access aisle to the accessible parking space shall be made level with respect to the presence of an accessible ramp in the access aisle or otherwise brought into compliance with section 502.4 of the 2010 ADAAG standards.  In addition, the accessible curb ramp shall be modified to correct any improper protrusion into the access aisle of the accessible parking space or to otherwise be brought into compliance with section 406.5 of the 2010 ADAAG Standards.

(xxii)  Near Unit 5704, the accessible parking space shall include a proper identification sign or otherwise brought into compliance with section 502.6 of the 2010 ADAAG standards.

(xxiii) (intentionally deleted).

(xxiv) Near the separate building, the accessible parking space shall be modified to include a proper identification sign or otherwise brought into compliance with section 502.6 of the 2010 ADAAG standards.

12

(xxv)  The Defendant shall modify its policy of placing parking stops in the access aisles at the Property, specifically as it pertains to the access aisle of the accessible parking space nearest the northern part the Property such that it would not promote parking in such access aisle(s) or otherwise brought into compliance with section 502.3.3 of the 2010 ADAAG standards.

(xxvi) Near the cell phone store in the corner of the Property, the access aisle to the accessible parking space shall be made level with respect to the presence of an accessible ramp in the access aisle or otherwise brought into compliance with section 502.4 of the 2010 ADAAG standards. In addition, the accessible curb ramp shall be modified so as to not improperly protrude into the access aisle of the accessible parking space or otherwise be brought into compliance with section 406.5 of the 2010 ADAAG Standards.

(xxvii)Near the cell phone store in the corner of the Property, the accessible parking space shall be modified to include a properly marked access aisle or otherwise be brought into compliance with section 502.3.3 of the 2010 ADAAG standards.

(xxviii)     Near the cell phone store in the corner of the Property, the accessible parking space shall be modified to correct any excessive vertical rises and be made level or otherwise in compliance with Sections 303.2 and 502.4 of the 2010 ADAAG standards.

(xxix) Near the cell phone store in the corner of the Property, any excessive vertical rise along the accessible ramp shall be modified or otherwise brought into compliance with Section 303.2 and 405.4 of the 2010 ADAAG standards.

(xxx)  Near the cell phone store in the corner of the Property, the accessible parking space shall be modified to include a proper identification sign or otherwise brought into compliance with section 502.6 of the 2010 ADAAG standards.

(xxxi) (Intentionally deleted)

(xxxii) (Intentionally Deleted)

(xxxiii)      Near Unit 5768, the access aisle to the accessible parking space shall be made level with respect to the presence of an accessible ramp in the access aisle or otherwise be brought into compliance with section 502.4 of the 2010 ADAAG standards.   In addition, the accessible curb ramp shall be modified to correct any improper protrusion into the access aisle of the accessible parking space or otherwise brought into compliance with section 406.5 of the 2010 ADAAG Standards.

14

## EXHIBIT B

**The Parties agree that the following modifications which were requested to be made by Defendant are Structurally Impracticable due to the unique characteristics of the property as defined in 28 CFR Sec.36.401.**

(i) (viii)   The Property shall be modified to include an accessible route connecting accessible facilities, accessible elements and/or accessible spaces, specifically with reference to the presence of stairs in the corner of the Property or to otherwise be brought into compliance with section 206.2.2 of the 2010 ADAAG standards.

(ii) (xxiii) The Property shall be modified to include an accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property, specifically as it pertains to the presence of stairs with no nearby ramp between Moroccan Bites Tajine and Unit 5724 or otherwise brought into compliance with section 206.2.2 of the 2010 ADAAG standards.

(iii)   (xxxi) ) Between Units 6178 and 5772, the walking surfaces of the accessible route shall be modified to correct any slope in excess of 1:20 or otherwise brought into compliance with section 403.3 of the 2010 ADAAG standards. As the accessible route is in excess of 1:20, it

15

shall be considered an accessible ramp due to its total rise greater than six (6) inches and shall include handrails in compliance with section 505 of the 2010 ADAAG standards, as well as section 405.8 of the 2010 ADAAG Standards.

(iv)   (xxxii) At Unit 5772, the doorway of the accessible entrance shall be made level or otherwise brought into compliance with section 404.2.4.4 of the 2010 ADAAG standards.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY, a true and correct copy of the above and foregoing has been filed electronically the Clerk of the Court using CM/ECF/system on this 24th day of May, 2021.

/s/ Dennis R. Kurz
Dennis R. Kurz

4